UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TORREY JONES,

     **Plaintiff,**

v.                                   **Case No: 8:26-cv-9-AAS**

MEGAN MERINO,

     **Defendant.**

_____/

## ORDER

Plaintiff Torry Jones brought this action under 42 U.S.C. § 1983 against Defendant Megan Merino, a patrol officer for the Temple Terrace Police Department, after an incident in which Mr. Jones was arrested outside a Carrabba's Italian Grill (Carrabba's) in Temple Terrace, Florida, and charged in Florida state court. The events leading to this incident were captured on the body cameras of two officers—Officer Merino and Officer Julio Encarnacion. After the state of Florida dropped the charges against Mr. Jones, he filed a complaint in this court alleging several violations of his constitutional rights.

Specifically, Mr. Jones's operative complaint alleges the following violations of his Fourth Amendment rights: (1) unlawful detention; (2) unlawful search; (4) false arrest; and (5) malicious prosecution. (Doc. 26). Officer Merino moves for summary judgment, arguing that the evidence fails

to show a violation of Mr. Jones's constitutional rights, and, alternatively, she is entitled to qualified immunity.[1] (Doc. 19).

## I.   BACKGROUND[2]

### A.   The parties' statements of fact

On November 30, 2025, Officer Merino was working as a patrol officer when, at approximately 9:43 p.m., while conducting a traffic stop at the Terrace Ridge shopping plaza, , she observed a black male sitting at a table outside the Carrabba's restaurant. (Doc. 25, ¶ 3). This black male is later identified as Mr. Jones. (*Id.*). Mr. Jones alleges he was peacefully charging his phone so he could request an Uber ride home. (Doc. 19, ¶ 7). Mr. Jones alleges that he was not disturbing anyone and was not asked to leave by an employee of Carrabba's or otherwise. (*Id.*, ¶¶ 8, 9). Officer Merino asserts she previously assisted Carrabba's with ongoing issues with unhoused individuals loitering in the area and using the outdoor power outlets. (Doc. 25, ¶ 5).

Before approaching Mr. Jones, Officer Merino claims she observed that his cell phone was plugged into an outlet and that he had a backpack. (*Id.*, ¶

---

[1] Although Officer Merino's motion is titled as a motion to dismiss and alternatively, as a motion for summary judgment, the court will consider it a motion for summary judgment. (*See* Doc. 32, p. 1).

[2] The court will first review the facts obtained from the operative complaint and affidavit of Officer Merino. Next, the court will review the body camera footage of Officer Merino and Officer Encarnacion. "All issues of material fact are resolved in favor of the plaintiff." *See Sparks v. Ingle*, 724 F. App'x 692, 693 (11th Cir. 2018) (citation omitted).

5). Officer Merino approached Mr. Jones and demanded his I.D. (Doc. 19, ¶¶ 11, 13). When asked why he was being asked for I.D., Officer Merino accused Mr. Jones of having warrants, with no basis for believing this was the case. (*Id.*, ¶ 13). While Officer Merino continued to insist on Mr. Jones giving his I.D., Officer Julio Encarnacion arrived at the scene to assist. (Doc. 25, ¶¶ 12–13).

Officer Encarnacion placed Mr. Jones in handcuffs and under arrest with Officer Merino's assistance. Officer Encarnacion searched Mr. Jones's person and belongings and placed him in the backseat of his patrol car. (Doc. 25, ¶ 18). Mr. Jones was transported to the police station, where he was charged with loitering and prowling, resisting arrest without violence, and a trespass warning was issued for the shopping plaza. (*Id.*, ¶¶ 15–17). Ultimately, these charges were terminated in Mr. Jones's favor. (Doc. 19, ¶¶ 18, 19).

**B.    The body camera footage**[3]

On November 30, 2025, at 8:42 p.m., Officer Merino pulls her police vehicle up to a curb on the front side of Carrabba's. A black male, Mr. Jones, is seen sitting alone at a table outside the restaurant. At this time, the video does not show that Mr. Jones had his phone plugged in or that he had a backpack

---

[3] Both Officer Merino's and Officer Encarnacion's bodycam footage were submitted as exhibits. (*See* Docs. 24-1, 2). The footage is nearly identical, except for the camera angle. Thus, the court will review Officer Merino's footage, as she is the defendant, and it is the most thorough. (Doc. 24-1).

beside him. The video shows him sitting and holding his phone. Within one minute, Officer Merino approaches Mr. Jones, asks for his I.D., and states that he is loitering. Officer Merino does not ask Mr. Jones why he is seated outside Carrabba's or if he is a patron of the restaurant. Mr. Jones unplugs his phone and attempts to leave. He states he has done nothing wrong, and Officer Merino continues to insist on Mr. Jones giving his I.D. At 9:44 p.m., Mr. Jones continues to state that he is not doing anything wrong and is just charging his phone so he can get a ride home. Mr. Jones peacefully tries to walk away from Officer Merino. Officer Merino keeps walking alongside Mr. Jones, insisting that he is trespassing, without confirming it.

At 9:46 p.m., Mr. Jones continues to attempt to walk away, and Officer Merino states, "No, no, no," and tells him that she is issuing a lawful command and that he must identify himself. Mr. Jones again states that he has done nothing wrong and was charging his phone to get "a little juice" so he could go home. At 9:47 p.m., Officer Encarnacion approaches to assist Officer Merino. Mr. Jones tells the officers that others were also sitting outside before the police arrived, and the police did not approach them.

The officers surround Mr. Jones. Mr. Jones remains calm as the officers continue to insist that he give them his I.D. At 9:48 p.m., when Mr. Jones states he has done nothing, Officer Merino responds, "How do I know that?" Continuing to insist on Mr. Jones giving his I.D., Officer Merino states, "I need

4

to make sure you don't have any warrants or anything." Mr. Jones responds, "You just come up and try to guess if I'm a criminal."

At 8:49 p.m., Officer Merino forcibly attempts to pull Mr. Jones's backpack off, while Officer Encarnacion states, "Take your fucking backpack off." Mr. Jones is compliant and does not resist the officers. By 8:50 p.m., Mr. Jones is handcuffed as pedestrians walk by. At 8:51 p.m., Mr. Jones tells the officers, "Just take my I.D.," and the officers say it's too late because Mr. Jones now has a charge of resisting arrest. At 9:51 p.m., Mr. Jones is made to sit handcuffed on the curb in front of Carrabba's while Officer Encarnacion begins searching Mr. Jones's belongings. Officer Encarnacion locates Mr. Jones's I.D., and Mr. Jones remains cooperative. At 9:59 p.m., Mr. Jones is put in the police car for "loitering" and "resisting." After searching Mr. Jones's belongings, he is transported to the police station for booking at 10:24 p.m.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is only proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In other words, summary judgment is warranted if a jury, viewing all facts and any reasonable inferences therefrom in the light most favorable to plaintiffs, could not reasonably return a verdict in plaintiffs' favor." *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1581 (11th Cir. 1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact . . ." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.*

## III.   ANALYSIS

### A.    Unlawful Detention

The Fourth Amendment guarantees "[t]he right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV. Case law recognizes "three broad categories of police-citizen encounters" for Fourth Amendment purposes: "(1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests." *United States v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006) (quoting *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989)).

Officer Merino's initial contact with Mr. Jones at 9:43 p.m. was a consensual encounter under the first category. *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (holding that approaching an individual in a public place, asking for identification, and asking questions is not a seizure "as long as police do not convey a message that compliance with their requests is required."). As Officer Merino concedes, as the interaction with Mr. Jones continued, the encounter

6

became an investigatory stop. Officer Merino made clear that compliance was required at 9:44 p.m. when she would not let Mr. Jones walk away.

The Supreme Court has held that police interactions in the first category do not implicate the Fourth Amendment. *See United States v. Drayton*, 536 U.S. 194, 200–01 (2002). Police encounters in the second and third categories, however, implicate one's Fourth Amendment right to be free from unreasonable seizures. This claim involves the second category of police-citizen encounters: an investigatory stop, also known as a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 30–31 (1968).

Generally, warrantless searches and seizures are presumptively unreasonable. *See United States v. Gordon*, 231 F.3d 750, 754 (11th Cir. 2000) (citing *Horton v. California*, 496 U.S. 128, 133 (1990)). But *Terry* stops are an exception. Under *Terry* and its progeny, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry*, 392 U.S. at 30). The court must assess "whether the officer's action was justified at its inception." *Terry*, 392 U.S. at 20.

"Any events that occur after a stop is effectuated cannot contribute to the analysis of whether there was reasonable suspicion to warrant the stop in the first instance." *United States v. Freeman*, 735 F.3d 92, 96 (2d Cir. 2013).

7

Accordingly, the court "must first determine when exactly" Mr. Jones was detained (or "seized"). *Id.* Then, the court must decide whether "there was reasonable suspicion for the stop 'at its inception.'" *Id.* (quoting *Terry*, 392 U.S. at 20).

A seizure arises "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *see also Miller v. Harget*, 458 F.3d 1251, 1257 (11th Cir. 2006); *United States v. Lowe*, No. CR 311-001, 2011 WL 2600513, at *4 (S.D. Ga. June 16, 2011), adopted by 2011 WL 2710393, at *1 (N.D. Ga. July 12, 2011). "Some factors which 'might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" *United States v. Hunter*, No. 1:07-cr-310-1T, 2008 WL 552881, at *3 (N.D. Ga. Feb. 25, 2008) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

Therefore, "[t]he key inquiry is whether, under the totality of the circumstances, 'the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *United States v. Edwards*, No. 1:05-cr-0097-WSD-JFK, 2007 WL 2479288, at *3 (N.D. Ga. Aug. 28, 2007), aff'd, 307 F. App'x 340 (11th Cir. 2009)

(quoting *United States v. Baker*, 290 F.3d 1276, 1278 (11th Cir. 2002)). "'That is, where a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter, the encounter with the police is consensual, and the Fourth Amendment is not implicated.'" *Id.* (quoting *United States v. Ramirez*, 476 F.3d 1231, 1238 (11th Cir. 2007)). Thus, a consensual encounter becomes a *Terry* stop if the defendant's cooperation "is induced by 'coercive means' or if a reasonable person would not 'feel free to terminate the encounter.'" *United States v. Wright*, No. 3:06-cr-447-MCR, 2006 WL 3483503, at *2 (N.D. Fla. Nov. 30, 2006) (quoting *United States v. Perez*, 443 F.3d 772, 777–78 (11th Cir. 2006)).

As stated above, viewing the facts in the light most favorable to Mr. Jones, his liberty was restrained when Officer Merino insisted on Mr. Jones's identification and prevented him from leaving the scene. After that time, another officer arrived, making it even more apparent that compliance was required. The court now considers whether there was reasonable suspicion to support that stop "at its inception." *Terry*, 392 U.S. at 20.

An officer may briefly detain a person for an investigative *Terry* stop only when there is "reasonable suspicion," based on articulable facts, that "criminal activity may be afoot." *Terry*, 392 U.S. at 30; *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citation omitted); *Hunter*, 373 F. App'x at 976. Although "the concept of reasonable suspicion is somewhat abstract," courts have deliberately

9

avoided reducing it to "a neat set of legal rules." *Arvizu*, 534 U.S. at 274 (citation and internal marks omitted) (quoting *Ornelas v. United States*, 517 U.S. 690, 695–96 (1996)). The officer must articulate a minimal, objective justification for an investigatory stop based on the totality of the circumstances. *Sokolow*, 490 U.S. at 7–8; *United States v. Williams*, 876 F.2d 1521, 1524 (11th Cir. 1989); *United States v. Cotton*, 721 F.2d 350, 352 (11th Cir. 1983).

While the reasonable suspicion standard is not onerous, an officer's reliance on a "mere hunch" is not sufficient to establish reasonable suspicion. *Arvizu*, 534 U.S. at 274 (citation omitted); *see also United States v. Lopez-Garcia*, 565 F.3d 1306, 1313 (11th Cir. 2009). Factors that have been found to properly support reasonable suspicion include: (1) presence in a high crime area, *Wardlow*, 528 U.S. at 124; *Adams v. Williams*, 407 U.S. 143, 144, 147-48 (1972); (2) the hour at which the activity is taking place, *Arvizu*, 534 U.S. at 274, 277; (3) observation by law enforcement of what appears to be criminal conduct based on their experience, *Terry*, 392 U.S. at 22–23; and (4) evasive conduct, *Wardlow*, 528 U.S. at 124; *United States v. Brignoni-Ponce*, 422 U.S. 873, 885 (1975); *see also United States v. Marcelino*, 736 F. Supp. 2d 1343, 1348–49 (N.D. Ga. 2010).

None of these factors is present here. It is clear from the bodycam footage that this Temple Terrace Plaza is not a high-crime area. The hour was

10

reasonable as it was before 10:00 p.m., stores and businesses were open, and people were walking about the plaza. There was no reason for Officer Merino to believe, even based on her experience, that a black male sitting peacefully outside a restaurant was committing a crime. Finally, Mr. Jones did not engage in evasive conduct other than refusing to provide his I.D. This refusal was based on Mr. Jones's statement that he had done nothing wrong, as he tried to walk away peacefully. Here, there is an issue of material fact as to whether reasonable suspicion was present at the inception of the stop.

### B.    Remaining Claims

Officer Merino asserts that Mr. Jones's arrest did not violate the Fourth Amendment because she had arguable reasonable suspicion to support an investigatory stop. Officer Merino also argues that the subsequent search of Mr. Jones did not violate the Fourth Amendment because it was a legal search incident to a lawful arrest. As the court has found that Officer Merino is not entitled to summary judgment on whether the *Terry* stop was lawful, these arguments do not provide a basis for finding in favor of Officer Merino on Mr. Jones's separate Fourth Amendment claims for false arrest, unlawful search, and malicious prosecution. *See Evans v. Stephens*, 407 F.3d 1272, 1286 (11th Cir. 2005) ("The absence of reasonable suspicion is also 'less than probable cause.'"); *see also Olson v. Stewart*, 737 F. App'x 478, 483 n.6 (11th Cir. 2018) (noting that under Florida law, suspects have a right to resist unlawful arrests

nonviolently).

### C.    Qualified Immunity

Officer Merino contends that, even if Mr. Jones could prove a constitutional violation, she is entitled to qualified immunity. "The doctrine of qualified immunity provides that 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Courts utilize a two-part framework to evaluate qualified immunity claims. One inquiry in a qualified immunity analysis is whether the plaintiff's allegations, if true, establish a constitutional violation." *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010) (citing *Hope v. Pelzer*, 536 U.S. 730, 736 (2002)). "If the facts . . . show that a constitutional right has been violated, another inquiry is whether the right violated was 'clearly established.'" *Id.* (citation omitted). "Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate . . ." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 241 (2009)).

Officer Merino was performing discretionary functions. As such, it is Mr. Jones's burden to show that Officer Merino is not entitled to qualified

12

immunity by demonstrating that both parts of the test are satisfied. *See Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012).

### 1. Constitutional Violation

Through its analysis addressing the lack of reasonable suspicion supporting Mr. Jones's seizure, the court has essentially resolved the first part of the qualified immunity analysis in the affirmative; Mr. Jones's allegations, if true, create an issue of material fact as to whether Officer Merino violated Mr. Jones's Fourth Amendment rights.

### 2. Clearly Established Right

In the context of arguable reasonable suspicion, as opposed to a more traditional qualified immunity analysis, the Eleventh Circuit has explained that: (a) the court must ask if "a reasonable jury could find" that no reasonable officer would have made the same mistake on the question of reasonable suspicion, and (b) the court must view the facts relevant to arguable reasonable suspicion in the light most favorable to the plaintiff. *Young v. Brady*, 793 F. App'x 905, 908, 913 (11th Cir. 2019) (per curiam).

Considering the pre-seizure facts, it is possible that a reasonable jury could find that no reasonable officer—possessing the same knowledge as Officer Merino—would have believed that she had reasonable suspicion to detain Mr. Jones. When Officer Merino stopped her vehicle on the front side of the Carrabba's, she did not know whether he was a paying customer. There

13

was no complaint call, and as the video shows, you cannot see Mr. Jones charging his phone or that he had a backpack until Officer Merino reached his person. Even if Officer Merino could have viewed these items, no inquiry was made into whether Mr. Jones was trespassing. Instead, Officer Merino put the onus on Mr. Jones to somehow prove he was not committing a crime. Mr. Jones was never aggressive throughout the encounter. At its inception, there is an issue of material fact as to whether a reasonable officer in Officer Merino's shoes would have concluded that she had reasonable suspicion to conduct an investigatory stop of Mr. Jones.

## IV.  CONCLUSION

Viewing the facts in the light most favorable to Mr. Jones, Officer Merino's motion for summary judgment (Doc. 26) is **DENIED.**

**ORDERED** in Tampa, Florida, on May 27, 2026.

_____
AMANDA ARNOLD SANSONE
United States Magistrate Judge

14